United States District Court
District of Massachusetts

| | |
|---|---|
| Jeffrey Peterson, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. |
| ) | 18-12572-NMG |
| Dennis K. Burke, et al., ) | |
| Defendants. ) | |

MEMORANDUM & ORDER

GORTON, J.

This action arises from an article published by defendants Phoenix Newspapers, Inc. and Gannett Co., Inc. that included allegedly defamatory statements about Jeffrey Peterson ("plaintiff" or "Peterson").

The following motions are pending before the Court: 1) the motion of Dennis K. Burke ("Burke"), Marco A. Lopez, Jr. ("Lopez"), Victor Flores ("Mr. Flores"), the Honorable Lisa Flores ("Judge Flores") and Mario Diaz ("Diaz") (collectively, "the Individual Defendants") to dismiss all counts against them for lack of personal jurisdiction; 2) the motion of Phoenix Newspapers, Inc. ("PNI") and Gannett Co., Inc. ("Gannett") (collectively, "the Corporate Defendants") to dismiss all counts against them for improper venue, or, in the alternative, to transfer the matter to the United States District Court for the

- 1 -

District of Arizona; and 3) the unopposed motion of the Individual Defendants for sanctions.

I. **Background**

   A. **Plaintiff and His Business Ventures**

   Peterson is a United States citizen living abroad in Toronto, Canada. Prior to moving to Canada in 2017 or 2018, he lived in Massachusetts, having relocated from either Nevada or Arizona in 2014.

   Peterson is, purportedly, the founder of Quepasa.com, a social media platform popular in the late 1990s and early 2000s. He leveraged his corporate success to forge connections with prominent local and national political figures and organizations, including the Democratic National Committee.

   In 2013, Peterson founded Mobile Corporation ("Mobile"), a mobile phone services company and platform for employers. Mobile was incorporated and headquartered in Nevada until July, 2017, when it filed a foreign corporation certificate of registration to establish an office in Cambridge, Massachusetts. Later in 2017, Peterson filed a certificate of withdrawal of a foreign corporation thereby surrendering Mobile's right to transact business in Massachusetts.

   Peterson was also involved in developing LoanGo, a startup online payday-loan company based in Arizona. Although he

- 2 -

succeeded in soliciting and securing initial funding, LoanGo was ultimately a failed venture.

### B. The Individual Defendants

Burke joined Mobile's board of directors in 2013. He is currently Of Counsel at the law firm of Ballard Spahr LLP in Phoenix, Arizona. Prior to joining Ballard Spahr LLP, Burke was general counsel and a partner at Global Security and Innovative Strategies, a business consulting firm headquartered in Washington, D.C. Before that, he served as the United States Attorney for the District of Arizona from 2009 to 2011. Burke is an Arizona resident and he does not work or own any property in Massachusetts.

Lopez was a member of Mobile's board of directors from 2013 until December, 2015. He is currently the President and Chief Executive Officer of International Business Solutions, Inc., a Delaware corporation headquartered in Virginia and in the consulting services business. He is the former mayor of Nogales, Arizona and has been a resident of Phoenix, Arizona since 2014. He does not work or own any property in Massachusetts. He further avers that he has never even visited the Commonwealth.

Mr. Flores is the President of Resource13, LLC, an Arizona lobbying firm, and has lived in Phoenix, Arizona with his wife,

Lisa Flores, a Maricopa County Superior Court Judge, since 1980. The Flores' do not work or own any property in Massachusetts. Mr. Flores has not travelled to Massachusetts since 2012 and Judge Flores not since 1996. Mr. Flores avers that his only connection to Mobile is that he maintained a personal relationship with Peterson and attended some Mobile sponsored events. He states that he rejected a request from Peterson for his formal assistance with Mobile's government relations and that he was never employed by Mobile. According to plaintiff, Judge Flores is a party to this lawsuit "solely because it is required to obtain jurisdiction over [] marital community property."

Diaz is President of Mario E. Diaz & Associates, LLC, a consulting firm in Scottsdale, Arizona. Diaz has lived in Arizona since 1988. He states that, although he knows plaintiff, he was never formally involved with Mobile as an employee, independent contractor, officer, director, shareholder or otherwise. He also confirms that he has never travelled to Massachusetts.

C. The Corporate Defendants

Defendant Gannett, a Delaware corporation headquartered in Virginia, promotes itself as a leading global, digitally focused media and marketing solutions company and the largest local

newspaper company in the United States. Gannett's consumer brands portfolio, which includes USA Today Network, publishes local and national news stories across the United States and the United Kingdom in print, on television and online. Gannett estimates that it reaches 49% of the United States digital population and maintains a global audience of 140 million people each month.

Defendant PNI, doing business as The Arizona Republic, is one of Gannett's consumer brands. PNI operates The Arizona Republic as well as the online website azcentral.com. PNI is an Arizona corporation with its principal place of business in Arizona.

### D. Misconduct and the Alleged Defamation

Investors began voicing concern when Mobile failed to generate any profit in either 2015 or 2016. As a result, the board of directors requested that plaintiff produce for review Mobile's financial records. According to defendants, those records showed that Peterson misappropriated corporate funds for personal expenses such as clothing, credit card payments, salon visits and car payments for personal vehicles. Defendants further contend that after Peterson was confronted about his conduct, he retained two criminal defense lawyers and absconded to Canada.

In October, 2017, PNI published a news article on azcentral.com and in The Arizona Republic entitled State Orders Failed Internet Payday Loan Venture to Pay $250K to Defrauded Investors ("the October Article"). It detailed several claims made by the Arizona Corporation Commission against Peterson and his business partners regarding alleged misconduct and mismanagement at LoanGo. It also referred to Quepasa as "a now-defunct Latino online social media outlet", which Peterson later vigorously disputed.

In December, 2017, PNI published another article about Peterson on azcentral.com and in The Arizona Republic entitled Once-High-Flying Quepasa Chief Jeff Peterson Under Fire as $9M Gone in Online Startups ("the December Article"). The December Article quoted several defendants and reported allegations that Peterson had misappropriated millions of dollars from LoanGo and Mobile investors to finance personal expenses.

Peterson alleges that as a result of the October and December Articles, he faced scrutiny from the Arizona Corporation Commission and was sued by a group of Mobile investors. He further contends that defendants acted in concert to orchestrate a retaliatory and tortious campaign against him to tarnish his reputation. He submits that defendants were motivated to prohibit him from sharing information about

improper conduct they allegedly engaged in, including maintaining controversial political, business and personal relationships with certain Mexican officials.

Peterson asserts claims for defamation, intentional infliction of emotional distress, tortious interference with contract, civil conspiracy and criminal harassment against defendants. He seeks damages for financial losses and permanent reputational harm.

### E. Procedural History

Plaintiff filed his initial complaint pro se in December, 2018. After retaining counsel, Peterson filed an amended complaint in May, 2019. Thereafter, the Individual and Corporate Defendants separately moved to dismiss. In August, 2019, after Plaintiff opposed both motions, the Individual Defendants moved for sanctions.

## II. Motion of the Individual Defendants to Dismiss For Lack of Personal Jurisdiction

### A. Legal Standard

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where, as here, the Court will

decide a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the Court applies the "prima facie" standard of review and takes the plaintiff's

> properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). A plaintiff cannot, however, rely on "unsupported allegations" and "must put forward evidence of specific facts to demonstrate jurisdiction exists." Id. (internal citations omitted).

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009). As such, to make a prima facie showing of personal jurisdiction in diversity cases, the plaintiff must demonstrate that the exercise of jurisdiction 1) coheres with the Due Process Clause of the Fourteenth Amendment of the United States Constitution by showing that each defendant has "minimum contacts" with Massachusetts and 2) is permitted by the Massachusetts long-arm statute, M.G.L. c. 223A § 3. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

Under the Due Process Clause, a court's jurisdiction may be either "specific" or "general." United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001). Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. Id. Such contacts must demonstrate that the defendant "purposeful[ly] avail[ed] [itself] of the privilege of conducting activities in the forum state." Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998). General jurisdiction, on the other hand, exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." Swiss Am. Bank, 274 F.3d at 618.

The requirements of the Massachusetts long-arm statute are substantially similar to (although potentially more restrictive than) those imposed by the Due Process Clause of the Fourteenth Amendment. See Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016) (noting that "[r]ecently . . . we have suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution"). See also Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).

**B. Application**

### 1. Massachusetts Long-Arm Statute

The Massachusetts long-arm statute authorizes the exercise of personal jurisdiction over defendants who "caus[e] tortious injury by an act or omission in this commonwealth", M.G.L. c. 223A, § 3(c), as well as defendants who

> caus[e] tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth,

M.G.L. c. 223A, § 3(d).

Plaintiff's complaint appears to assert that the Court possesses jurisdiction over the Individual Defendants pursuant to § 3(c) but fails to identify any tortious acts or omissions committed by the Individual Defendants in Massachusetts that caused injury to the plaintiff. For that reason, jurisdiction is more appropriately analyzed under § 3(d), which applies to conduct taken outside of Massachusetts that allegedly caused tortious injury within the Commonwealth.

Section 3(d) requires plaintiff to show that each Individual Defendant "regularly does or solicits business", "engages in any . . . persistent course of conduct" or "derives substantial revenue from goods . . . or services" in Massachusetts. Plaintiff fails to proffer any argument that any

- 10 -

of the Individual Defendants meets the requirements of § 3(d). Instead, he contends that Mobile meets those requirements and, because the Individual Defendants were directors, officers, employees or agents of Mobile, they are subject, a fortiori, to the Court's jurisdiction.

Plaintiff's argument is unavailing. An individual's status as a corporate officer is insufficient to subject that individual to personal jurisdiction in a foreign forum. M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 279 (D. Mass. 2008) ("[I]t is axiomatic that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." (internal quotations omitted)). Although Massachusetts courts have rejected the blanket assertion that individuals acting in their official capacity are thereby shielded from suit in their individual capacity, "more than mere participation" in the affairs of the corporation is required. Id. at 281.

For purposes of exercising personal jurisdiction over a corporate officer, the inquiry is whether the individual was a "primary participant" in the alleged wrongdoing. Calder v. Jones, 465 U.S. 783, 790 (1984). This analysis requires consideration of whether the individual "derived

personal benefit" or acted beyond the scope of his or her employment with respect to contacts with the forum state. M-R Logistics, LLC, 537 F. Supp. 2d at 280.

As a preliminary matter, it is unclear whether any of the Individual Defendants was, in fact, a director, officer, employee or agent of Mobile. Even if one or more were, plaintiff has failed sufficiently to allege that any of the Individual Defendants was a primary participant in the alleged wrongful activity. Plaintiff generally alleges, but proffers no evidentiary support, that the Individual Defendants benefited from the publication of the October and December Articles because, by damaging plaintiff's credibility, the Individual Defendants ensured that plaintiff would not divulge information about their alleged controversial activities and misconduct. The Court declines to credit such unsupported allegations.

Accordingly, the Massachusetts long-arm statute does not authorize the Court's exercise of jurisdiction over the Individual Defendants. Having so concluded, the Court need not consider the Due Process Clause implications.

## III. Motion of the Corporate Defendants to Dismiss for Improper Venue, or, in the Alternative, to Transfer

The Corporate Defendants move to dismiss for lack of venue, or, in the alternative, to transfer the claims against them to the United States District Court for the District of Arizona. For reasons discussed below, this Court concludes that the proper course is to transfer the case to the District of Arizona.

### A. Legal Standard

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." In order for the Court to transfer under § 1404(a), it must be shown that the case could have been properly brought in the transferee forum. Venue is proper in a judicial district in which the defendant resides or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." 28 U.S.C. § 1391(b)(2). A corporate defendant resides in any "judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

While the decision to transfer a case under § 1404 lies solely within the discretion of the trial court, there is a

- 13 -

presumption in favor of the plaintiff's choice of forum. Momenta Pharm., Inc. v. Amphastar Pharm., Inc., 841 F. Supp. 2d 514, 522 (D. Mass. 2012) (citation omitted). A plaintiff's choice of forum should "rarely be disturbed" unless the balance is strongly in favor of defendant. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

The defendant bears the burden of proving that transfer is warranted. Momenta Pharm., 841 F. Supp 2d at 522. Factors to be considered include 1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interests at stake. Id.

### B. Application

Here, plaintiff's choice of forum is the only factor that weighs against transfer to the District of Arizona. Although plaintiff is entitled to a presumption in favor of his chosen district, such a presumption is rebutted where, as here, the balance of factors weighs substantially in favor of transfer.

Consideration of the convenience of the parties and witnesses and the location of evidence supports transfer. Indeed, plaintiff fails to proffer any reason why Massachusetts is a more convenient forum than Arizona. Peterson does not

reside in Massachusetts, none of the defendants reside in Massachusetts and none of the alleged conduct occurred in Massachusetts. Plaintiff makes no claim that any documentation or evidence exists in the Commonwealth or that any witnesses reside in Massachusetts.

To the contrary, the entirety of the alleged conduct occurred in Arizona, was performed by Arizona residents and involved an Arizona publication. Prior to relocating, plaintiff was active in Arizona political, business and social circles. All but one of the Individual and Corporate defendants either reside or are headquartered in Arizona. On balance, the inconvenience to the defendants of having to litigate in Massachusetts substantially outweighs any convenience to plaintiff of litigating in Massachusetts.

The tenuous connection between Massachusetts and the issues involved in this litigation further supports transfer. Candidly, the Court struggles to find any meaningful connection and plaintiff proffers none. He intimates that, at some point in time, though not currently, he lived in Massachusetts and suffered reputational harm here as a result of defendants' actions. That scant connection is outweighed by the overwhelming connections to Arizona.

With respect to what law would apply to plaintiff's claims, the Court declines to engage in an extended choice-of-law analysis. Instead, it views this factor in light of the presumption in plaintiff's favor and assumes, for the sake of argument, that Massachusetts law would apply. Consequently, this factor weighs slightly (but only insignificantly) against transfer.

Finally, state and public interests, such as administrative difficulties and the local interest in local controversies, further supports transfer to the District of Arizona. For reasons already discussed, Arizona has a significant interest in resolving this tort action involving Arizona residents and an Arizona publication.

In summary, public and private interest factors weigh strongly in favor transfer to the District of Arizona.

### IV. Motion for Sanctions

The Individual Defendants seek an award of attorney's fees and costs pursuant to Fed. R. Civ. P. 11 to sanction plaintiff for filing a frivolous complaint. They contend that plaintiff's amended complaint asserts positions and causes of action that have no basis in law or fact and that seek only to harass, annoy and embarrass the Individual Defendants.

The Court declines to impose sanctions at this time. It forewarns plaintiff, however, that he will be subject to sanctions if he continues to flout the Local Rules or attempts to resurrect the dismissed claims, either through a motion to amend the complaint in this case or by commencement of a new action against the Individual Defendants based upon the same alleged conduct.

**ORDER**

For the foregoing reasons,

    a. the motion of Dennis K. Burke, Marco A. Lopez Jr., Victor Flores, the Honorable Lisa Flores and Mario Diaz ("the Individual Defendants") to dismiss all counts against them for lack of personal jurisdiction (Docket No. 31) is **ALLOWED**;

    b. the motion of Phoenix Newspapers, Inc. and Gannett Co., Inc. to transfer venue to the United States District Court for the District of Arizona (Docket No. 33) is **ALLOWED**; and

    c. the motion of the Individual Defendants for sanctions (Docket No. 41) is **DENIED**, without prejudice.

**So ordered.**

                                                      /s/ Nathaniel M. Gorton
                                                      Nathaniel M. Gorton
                                                      United States District Judge

Dated January 10, 2020